FILED
August 27, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ANB
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re a Search of a Certain Apple iCloud Account* | §<br>§<br>§<br>§<br>§<br>§ | NO. 5-26-MC-55555 |

**ORDER REGARDING APPROVAL OF AMENDED SEARCH WARRANT APPLICATION**

Before the Court is an approved Amended Application for Search Warrant, in case No. 5:26-MJ-712, relating to an iCloud account. A different case number is used here to allow this order's entry on the public docket. Matters in No. 5:26-MJ-712 remain sealed. Although the Warrant Application has been approved, the Court provides this order to clarify the procedural and legal bases for the Court's actions, as discussed in greater detail below.

Search-warrant applications and other pretrial *ex parte* criminal matters, except requests for wire taps, are primarily the province of Magistrate Judges. In the San Antonio Division of the Western District of Texas, these matters fall to the Magistrate Judge on criminal duty at the time of the submission. *See* Fed. R. Crim. P. 41(d), (e), (f)(1)(D), (i); W.D. Tex. Local Rule CR-58(a); App. C to W.D. Tex. Local Rules, Rule 1(a)(1). Jurisdiction is pursuant to 28 U.S.C. § 636(a)(1). Venue is pursuant to the Stored Communications Act, 18 U.S.C. § 2703(a), as this Court has jurisdiction over the offenses under investigation, *see* 18 U.S.C. § 2711(3).

To be more specific, the United States Attorney's Office ("USAO") submitted by email—consistent with the federal and local rules as well as procedures established by the Magistrate Judges in the San Antonio Division—a packet for approval by the Magistrate Judge containing the

following: (1) a non-substantive cover sheet, mandated by the Magistrate Judges and developed in conjunction with the USAO, that provides basic information about the Application; (2) a Motion to Seal with corresponding Proposed Order; (3) an Application for a Search Warrant with Attachments A and B, which describe the property to be searched and particular things to be seized; (4) an Affidavit in support of the Application; and (5) an unsigned Search Warrant for the Magistrate Judge's signature, with Attachments A and B.

Upon initial review, I determined that probable cause was established but nonetheless declined to approve the submission without prejudice to its resubmission. As is customary, I provided limited information through an *ex parte* phone call to the USAO sufficient to explain generally my reasons for the denial, which primarily involved a disconnect between the probable cause established and the scope of the contemplated search. The USAO shortly thereafter submitted an Amended Application packet that adequately addressed my concerns. After speaking to the affiant by phone and under oath, I approved the Amended Application. Consistent with the aforementioned Court procedures, the original submission was assigned a case number, marked "Denied," and placed on the docket. A *pro forma* order noting the denial was also entered on the docket. The Amended Application was approved, signed, and docketed.

What I describe is not uncommon in our busy San Antonio Division. It reflects standard practice. Historically, the Court would issue no formal order related to this matter, except, as here, where the Magistrate Judge deems it appropriate to enter a *pro forma* Order filed under seal and noting the initial denial. Such *pro forma* orders recently became the norm in our Division.

But in light of recent developments that occurred in an unrelated case before a different Magistrate Judge, I provide this Order to educate about the role, duties, and responsibilities of Magistrate Judges in this Division vis-à-vis *ex parte* criminal pretrial matters.

* * *

*"Our Founders recognized that . . . even good faith actors can be overcome by the zealous pursuit of legitimate public interests."*

-- *United States v. Smith*, 110 F.4th 817, 841 (5th Cir. 2024)

(Ho, J., concurring).

In federal court, it is primarily United States Magistrate Judges who in the first instance apply and safeguard Fourth Amendment protections in connection with search-warrant and other *ex parte* criminal pretrial process. *See* 28 U.S.C. 636(a); *United States v. Morton*, 46 F.4th 331, 340 (5th Cir. 2022) (en banc) ("For better or worse, the warrant requirement and good-faith rule make the judge presented with the warrant application the central guardian of Fourth Amendment rights."). In aid of understanding the task facing Magistrate Judges, it is helpful to take note of Judge Ho's reminder that "hamstringing the government is the whole point of our Constitution." *United States v. Smith*, F.4th 817, 841 (5th Cir. 2024) (Ho, J., concurring).

The Fourth Amendment provides, in pertinent part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[N]o Warrants shall issue," it mandates, "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. In other words, "[t]he securing of a warrant is not a mere formality or technicality." *United States v. Bradley*, 922 F.2d 1290, 1295 (6th Cir. 1991) (citing, *inter alia*, *McDonald v. United States*, 335 U.S. 451 (1948)), *distinguished on other grounds by United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993)). Yet, Federal Rule of Criminal Procedure 41 rather straightforwardly provides that "[a]fter receiving an affidavit or other

information, a magistrate judge . . . *must issue* the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device." Fed. R. Crim. P. 41(d)(1) (emphasis added).

I have, over the past more than eight years, experienced common misconceptions surrounding search warrant and other similar requests for *ex parte* criminal process. Without necessarily attributing any particular statement to any participant or party, some of the more notable of those misconceptions are:

- The plain language of Federal Rule of Criminal Procedure permits the denial of a warrant application *only* for absence of probable cause.
- Rule 41 mandates issuance of a warrant upon a showing of probable cause.
- The submission, by a party requesting a warrant or similar process, of a draft order that seeks relief that is narrower than the authority sought in an associated application can never be grounds for denial of the warrant.
- Where probable cause has been established, it is improper to deny a warrant application if a Magistrate Judge can instead narrow the scope of the warrant by simple interlineation without denying the warrant altogether.
- Some or perhaps all of the Magistrate Judges in San Antonio require the submission of error-free applications for legal process as a prerequisite to approval.
- The constitutional principle of Separation of Powers does not permit a Magistrate Judge to request supervisory review as a prerequisite to submission and approval of warrant applications. This is so even if the requirement is imposed temporarily and in response to the repeated submission of mistake-ridden, incorrect, internally inconsistent, or otherwise defective submissions.

Concerned that these misconceptions might create, at best, a significant misunderstanding between the USAO, the defense bar, and the Magistrate Judges, or at worst lead to conflicts about the role of Magistrate Judges and the law governing search warrants and other *ex parte* criminal process, I provide this Order to make my positions on these issues a matter of public record.

* * *

**A Magistrate Judge does not merely assess probable cause**. Although probable cause is a necessary condition for issuance of a search warrant, the existence of probable cause is

insufficient *on its own* to justify issuance of a search warrant. *E.g.*, *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (finding warrant "plainly invalid" even though supported by probable cause because it failed to satisfy the Constitution's particularity requirement).

One need look no further than the text of the Fourth Amendment to understand that single-minded focus on probable cause is misplaced. Reasonableness, probable cause, and particularity are all foundational prerequisites for a search warrant:

> The text of the [Fourth] Amendment [ ] expressly imposes *two requirements*. First, all searches and seizures must be *reasonable*. Second, a warrant may not be issued unless *probable cause* is properly established and the scope of the authorized search is set out with *particularity*.

*Kentucky v. King*, 563 U.S. 452, 459 (2011) (emphasis added and citation omitted). Law enforcement's or the USAO's belief that probable cause exists does not suffice either:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a *neutral and detached magistrate* instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . The right of officers to thrust themselves into a home is [ ] a grave concern . . . to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, *to be decided by a judicial officer*, not by a policeman or Government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13-14 (1948) (emphasis added and footnotes omitted).

**Particularity and Overbreadth.** Search warrants must be specific. Two prongs comprise specificity: particularity and breadth. *See, e.g.*, *Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d 62, 75-76 (D.D.C. 2021). Particularity requires that the warrant "'particularly describ[e] the place to be searched, and the persons or things to be seized.'" *Groh*, 540 U.S. at 557 (quoting U.S. Const. amend. IV with added emphasis omitted). Obviously, then, every Magistrate Judge reviewing a search warrant application examines it for

particularity and, regardless of probable cause, must reject the application if it fails to comply with the Fourth Amendment's particularity requirement. *See id*. at 559 ("We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches *whose only defect* is a lack of particularity in the warrant." (emphasis added)). In sum, "[t]o avoid fatal generality, the place and items to be seized must be described with sufficient particularity so as to leave nothing to the discretion of the officer executing the warrant." *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (quotation marks and citations omitted).

The breadth requirement involves matching the scope of the warrant with the scope of the probable cause established. "A warrant is not constitutionally overbroad so long as the time, location, and overall scope of the search are consistent with the probable cause set forth in the warrant application." *Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d at 76 (citation omitted). "The [warrant's] supporting affidavit must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being investigated." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (citing *Warden v. Hayden*, 387 U.S. 294, 302, 307 (1967)). It is the "duty of an issuing magistrate [judge] to ensure that a warrant corresponds to the content of the supporting affidavit." *United States v. Ramirez*, 63 F.3d 937, 941 (10th Cir. 1995).

Descriptions provided in a warrant about what places are covered and what may be seized "are highly relevant in determining the permissible scope and intensity of the search which may be undertaken pursuant to the warrant." Wayne R. LaFave, 2 Search and Seizure: A Treatise on the Fourth Amendment § 4.10. Scope and Intensity of the Search (6th ed. Nov. 2025). Thus, the Magistrate Judge is duty-bound to reject warrant applications that seek authority to search areas or seize objects or people for which there is not a corresponding showing of probable cause. The

probable cause, therefore, must match the search. Any belief that a finding of probable cause for *something* effectively mandates approval of a warrant notwithstanding issues of overbreadth is mistaken.

**Reasonableness.** A search must be reasonable. And an assessment of a search's reasonableness occurs by the Magistrate Judge *before* a search is authorized. *See, e.g.*, *Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d at 77 ("Reasonableness is assessed before the warrant is issued, not only in response to a motion to suppress." (citation omitted)). Indeed, as the Supreme Court has recognized,

> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for promotion of legitimate governmental interests.

*United States v. Knights*, 534 U.S. 112, 118-19 (2001) (internal quotation marks and citation omitted); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978) (recognizing that the "*preconditions* for a warrant" are "probable cause, specificity with respect to the place to be searched and the things to be seized, and *overall reasonableness*" (emphasis added)); *see also id*. at 570 (Powell, J., concurring) (stating that "the magistrate [judge] must judge the reasonableness of every warrant in light of the circumstances of the particular case, carefully considering the description of the evidence sought, the situation of the premises, and the position and interests of the owner or occupant").

**Jurisdiction.** Of course, there must be jurisdiction. Every submission must establish the Court's jurisdiction. Warrant applications and other process can be, and not infrequently are, denied on this basis. An Order issued without jurisdiction is void, and so when the Court denies an application for want of jurisdiction, which the Court must do, the Court significantly assists the USAO by effectively rescuing it from a mistake of potentially monumental proportions. Judges

become justifiably frustrated with a litigant that repeatedly seeks to have the Court act without valid authority. The submission of search-warrant and other *ex parte* process that fails to establish in no uncertain terms the Court's jurisdiction (and venue) is therefore strongly disfavored.

**A Magistrate Judge is not a rubber stamp**. The Constitution interposes the Magistrate Judge into criminal investigative proceedings by design, and it does so specifically to prevent Government overreach:

> Absent some grave emergency, the Fourth Amendment has interposed a magistrate [judge] between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. *Power is a heady thing; and history shows that the police acting on their own cannot be trusted*.

*McDonald*, 335 U.S. at 455-56 (emphasis added). A Magistrate Judge fails by merely rubber-stamping warrant requests, because by doing so the Judge becomes a *de facto* prosecutor:

> A magistrate [judge] failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.

*United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27 (1979)).

Indeed, Magistrate Judges are afforded significant latitude in assessing whether the requirements for issuance of a warrant are met. This latitude allows a Magistrate Judge to elect *in the Judge's discretion* whether to provide direction to the Government in connection with a warrant application:

> [T]he magistrate [judge's] . . . duty is not to 'rubber stamp' conclusory allegations, but to require adequate factual details or underlying circumstances. Neither does 'detached' mean that he must remain mute, and simply accept or reject an affidavit.

*Albitez v. Beto*, 465 F.2d 954, 956 (5th Cir. 1972) (quotation marks in original). But make no mistake, it is the Magistrate Judge's prerogative to weigh the risk of a loss of neutrality versus any inclination to provide insight or assistance concerning a warrant's approval or denial. There is nothing to my knowledge that empowers the USAO or anyone else to require or rely upon the Magistrate Judge to fix, by interlineation or otherwise, insufficient warrant applications.

Once a Magistrate Judge approves a search warrant, significant consequences attach. Not only is a search of someone's "person[], house[], papers, and effects" likely being authorized, U.S. Const. amend. IV, the *Leon* good-faith exception to the exclusionary rule is triggered by a warrant's approval. That exception notably doesn't apply when the Judge "serve[s] merely as a rubber stamp for the police." *Leon*, 468 U.S. at 914 (quotation omitted).

**A Magistrate Judge is under no obligation to explain a warrant denial.** A Magistrate Judge's reluctance to detail *why* a warrant application or other submission is rejected stems from a concern that the Judge is not a prosecutor and must never been seen to act as one. *See id*. Likewise, an explanation that a submission is rejected for one reason doesn't guarantee that there aren't other reasons to further reject it. Nor is a Magistrate Judge obligated to provide *any* explanation, let alone *every* possible explanation, for a rejection. It is within each Judge's discretion to provide an explanation at all, let alone to discuss multiple grounds for a rejection. Any suggestion to the contrary is in error, and binding case law does not support it.

**Some warrant interactions are *ex parte* and others need to be on the record.** Magistrate Judges have authority to administratively deny *ex parte* requests and allow resubmission. What this approach gains in efficiency it threatens to lose in transparency.

Magistrate Judges are, in my experience, most comfortable with providing feedback when the deficiencies at issue are minimal and those presenting matters for approval have earned the

Judge's trust within the confines of a given submission and, as may be appropriate in the circumstances, over the course of repeated submissions. There is no requirement, however, that the USAO or any other entity or person enjoy the benefits of unlimited *ex parte* communications with and re-submissions to a Magistrate Judge. Nor is there any requirement that a Magistrate Judge issue only an administrative denial and then allow resubmission in any given case and in connection with any given submission.

Placing matters on the record, as may be appropriate in a Magistrate Judge's discretion, has benefits. It protects the Government by memorializing the scope of the Magistrate Judge's involvement in securing the warrant or other process. When these activities are done as a matter of record, when appropriate, there can be no doubt about the separation between Judge and prosecution, or that approval of a warrant was obtained from a "neutral" Magistrate Judge. Creating a record in appropriate cases also protects the rights of the target of an investigation or prosecution. The target is hard-pressed to know the extent to which a search warrant or other *ex parte* matter might be subject to attack, if the target is entirely ignorant of a warrant or other submission's history with the reviewing Magistrate Judge.

But there can be limits to the need to create a record. For example, when only scattered technical or non-substantive typographical errors are involved, the push to make a record can create practical log jams and gum up the business of the Court. *See, e.g.*, *Albitez*, 465 F.2d at 956. It can also unnecessarily slow down or impede important investigations. In such circumstances, among others, a Magistrate Judge is at liberty to move things along by refraining from placing every interaction with the USAO on the record. But it is ultimately for the Magistrate Judge to decide where and how to draw this line and whether and when to make a record.

Finally, it must be clarified that placing *ex parte* matters on the record protects the Magistrate Judge and the integrity of the Court. When the Judge communicates *ex parte*, there is a chance those communications will be shared, misunderstood, or even misreported. Magistrate Judges ought to avoid a "he said / she said" situation in which instructions or statements provided off the record and *ex parte* are later unilaterally invoked by a litigant seeking to achieve a different outcome. Accordingly, matters in connection with search warrants and other criminal pretrial submissions must be placed on the record to the extent needed to protect not only the Government and the defendant but also the Magistrate Judge and the integrity of the process. From the Magistrate Judge's perspective, where there is less trust in connection with *ex parte* communications, more must and will be placed on the record.

**Credibility.** The Fourth Amendment requires that the affiant attesting to facts in support of a warrant application be credible and reliable:

> The task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added and citation omitted).

Minor mistakes in warrant submissions are an unfortunate, yet predictable, part of the process. *See, e.g.*, *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010) (noting, "search warrant affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation'" (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965))). But an accumulation of non-substantive typographical or similar sloppy errors communicates a lack of care and attention to detail that undeniably implicates an assessment of the submission's merits as well as the credibility of the submitting party or parties. *See Gates*, 462 U.S. at 240 (providing that

"[n]othing in our opinion in any way lessens the authority of the magistrate [judge] to draw [ ] reasonable inferences as he will from the material supplied to him by applicants for a warrant; indeed, he is freer than under . . . [a rigid rule] to draw such inferences, *or to refuse to draw them if he is so minded*." (emphasis added)).

Some mistakes can be excused or fixed, but others undermine the reviewing Magistrate Judge's confidence in an affiant's and the USAO's credibility. *Cf., e.g.*, *Groh*, 540 U.S. at 556 (affirming court of appeals' reversal of district judge's dismissal of *Bivens* claims, where district judge erred by concluding that omissions in warrant affidavit were "a mere typographical error" (quotation omitted)). The Magistrate Judge, not the USAO, makes this determination based on the totality of the circumstances. For one Judge and in one set of circumstances, mistakes or sloppiness may justify outright denial of a warrant; for another Judge in different circumstances the warrant might be approved or be susceptible to resubmission after correction. Or, in an appropriate case, the Judge might make minor corrections before approving the warrant.

At some point, errors mount and become a problem, both within a given submission or on a global basis across multiple submissions from the same office. A Magistrate Judge is not any litigant's proofreader. *See, e.g., Groh*, 540 U.S. at 556-57 (affirming reversal of the dismissal of *Bivens* claims even where magistrate judge could have corrected omissions characterized by the district judge as "a mere typographical error" (quotation omitted)); *see also Leon*, 468 U.S. at 914 (warning that a judge cannot act as "an adjunct law enforcement officer" (quotation omitted)). And undesirable incentives are created if the USAO and officers are unconcerned by material errors or other shortcomings in warrant submissions and instead expect, or indeed even demand, that the reviewing Judge fix mistakes by simple interlineation or otherwise. In such circumstances, overbroad or otherwise defective submissions are effectively encouraged, the Magistrate Judge

risks becoming a *de facto* lawyer for the party, important Fourth Amendment rights are threatened, and the Magistrate Judge must push back. *See Leon*, 468 U.S. at 914.

Yet at the same time, judges should not improperly impede prosecutions or investigations with overly pedantic nit-picking of *ex parte* submissions. And as mentioned, sometimes errors are attributable to the exigencies and pressures of fast-moving investigations and prosecutions. A balance must be struck.

For the Court, balancing the incentives cultivated by demanding high-quality submissions against the time and other pressures faced by investigators and prosecutors has proven a difficult task over the course of an eight-year initial term as a Magistrate Judge. The Court has learned that some leniency with regard to these matters is needed, but it must be *within reason*.

This Order reflects that repeated, informal efforts to achieve a healthy balance, though not fruitless, have yielded insufficient results. I fear that here in San Antonio, an unhealthy expectation persists in the USAO that procedurally or substantively inadequate, sloppy, or otherwise deficient *ex parte* submissions are not a big deal or ought to be fixed by the reviewing Magistrate Judge through simple interlineation. A purpose of this Order is to extinguish that expectation.

Moreover, it does not escape the Court's notice that certain prosecutors and repeat affiants consistently provide *ex parte* submissions of a higher quality, which is compelling evidence that time constraints, pressures of the job, and other offered explanations for sloppiness and errors are ultimately unpersuasive. Mistakes happen. But they should happen only infrequently and shouldn't be repeated by the same attorney or the same Office.

**Magistrate Judges can and do routinely impose procedural requirements on warrant submissions and reject submissions on procedural grounds.** There can be no meaningful debate that a Magistrate Judge has the authority to impose necessary procedural requirements in

connection with search warrants and other *ex parte* submissions. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (noting that federal courts possess authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (citation omitted)). There is also no room for debate that all judges are at liberty to deny requests for relief—in whatever shape or form—on purely procedural grounds. *See*, *e.g.*, *Leon*, 468 U.S. at 918 (noting a species of rejected search warrants that qualify as "technically defective warrant[s] supported by probable cause"). Such denials are typically justified regardless of a given submission's merits. To conclude otherwise would nonsensically render procedural rules mere suggestions, and mean courts do not have the authority to regulate their dockets and practice before them. And like all federal judges, Magistrate Judges have significant authority to enforce their orders and punish contempt. *See, e.g.*, 28 U.S.C. § 636(e).

**An appeal under 28 U.S.C. § 636(b)(1) is not the appropriate means to challenge the denial of a warrant application.** Appeal to a District Judge under 28 U.S.C. § 636(b)(1) from the denial of a Search Warrant Application is not available. *See* 28 U.S.C. § 636(a)(1) (establishing that Magistrate Judges have "all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts"); *In re Anthony Marano Co*., 647 F. Supp. 3d 643, 656 (N.D. Ill. 2022) (discussing these jurisdictional matters intelligently and at great length, and noting, "Congress [ ] provided for district court review of magistrate judge decisions in at least three situations: (1) decisions made on Section 636(b) referrals; (2) detention-or-release decisions made under Section 636(a)(2) and reviewable under 18 U.S.C. § 3145; and (3) certification of facts in support of a contempt citation under 28 U.S.C. § 636(e).[] Yet Congress does not appear to have provided anywhere that any

decision by a magistrate judge under Section 636(a)(1) [to deny a search warrant] is reviewable by a district court.").

If the USAO needs relief from the denial of a search warrant application, perhaps a writ of mandamus is available: a petition for a writ of mandamus to the District Judge or Fifth Circuit has the notable requirements of an official record in support and notice to the Magistrate Judge, who would be a respondent. *See, e.g.*, 28 U.S.C. §§ 1361, 1651(a); Fed. R. App. P. 21.

Or perhaps a denied application could simply be resubmitted *de novo* to a District Judge, who obviously has all the powers and authority (and more) of a Magistrate Judge. *See, e.g.*, Fed. R. Crim. P. 1(c) ("When these rules authorize a magistrate judge to act, any other federal judge may also act."). In such circumstances, however, the USAO would owe a duty of candor to the Court that would include informing the District Judge of all prior denials and accurately providing to the District Judge all written correspondence or Orders issued in connection with previous submissions and denials. *Cf.* Fed. R. App. P. 21(a)(2)(C) ("The [mandamus] petition must include a copy of any order or opinion or parts of the record that may be essential to understand the matters set forth in the petition."); Model Rules of Pro. Conduct R. 3.3(a) & (b) (A.B.A. 2026) ("A lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . [or] fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client."); *id*. R. 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."); Texas Disciplinary Rules of Pro. Conduct R. 3.03(a)(3) & (a)(4) (March 7, 2025) (materially identical to ABA rule); U.S. Dep't of Justice, Justice Manual § 1-4.010, at

https://www.justice.gov/jm/justice-manual ("Department attorneys [ ] must comply with applicable rules of professional conduct.").

If the USAO seeks the relief discussed in the previous paragraph, it should also provide notice to the Magistrate Judge. This would mirror the requirements of a mandamus petition by also providing the Magistrate Judge with notice of the resubmission. Notice should also be given when submitting or resubmitting a search warrant application directly to the District Judge, as it would circumvent well-established local procedures. Indeed, a Magistrate Judge who previously denied a warrant but then learned only through the grapevine of a resubmission to a District Judge would likely have more to say on the topic. The Magistrate Judge would have even more to say if the resubmission to another Judge didn't fully and accurately relate the circumstances of the prior denial. So would the District Judge, one suspects.[1]

**IT IS SO ORDERED.**

Date: August 27, 2026

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

[1] In 2025, the USAO submitted for approval by the Magistrate Judges in San Antonio in excess of 1,700 *ex parte* criminal matters. For a repeat player like that, the act of resubmitting one of 1,700 matters in contravention of well-settled procedures, directly with a District Judge, *without notice* to the Magistrate Judge, and in the hopes of obtaining a different ruling would constitute a breach of trust with the Magistrate Judges of *colossal* proportions. Making such a no-notice, out-of-procedure resubmission for criminal process without disclosing all relevant facts or misreporting facts to a District Judge *ex parte* would be, in my view, inexcusable.